Good morning. I'm Paul Eaglin, the lawyer for Diana Hornbeck. Thank you for hearing her case. I'm from Fairbanks. This is a Social Security appeal. Diana Hornbeck was an unrepresented applicant for Supplemental Security Income who appeared at a hearing, as I said, unrepresented, attempted to offer medical records that were not accepted by the judge. In representing her on appeal, I've argued on her behalf that the refusal to accept these medical records in a Supplemental Security Income case was error. It was error because, despite the government's position that because it's an SSI application and she would be entitled only from application date, that these records were significant if one were to look at the analytical steps required in a disability case. The decision that you have before you, the final agency decision, indicated that the judges, the ALJ's judgment, that Ms. Hornbeck could do her last job as performed. That was apartment manager in 1998. If you would look at the colloquy that's in the brief and also in the records, I tried to illustrate that what she was offering to the judge were medical records that appeared to be for a period of time that extended for some years, ending in 1998, which is when she had the apartment manager job. She has the burden of proof as an applicant through the five steps of the sequential evaluation process. When she arrived, the medical records would be important for steps two, whether she has a severe impairment, step three, whether she meets or equals a listing. They would also be pertinent at the final steps, four and five, and critically important at this step, unnumbered step, where a judge engages in what's called the residual functional capacity analysis. It's relevant there, as I argued in the brief, because in order to determine that she can or cannot do certain types of employment, certain types of jobs, it's important to be able to look at medical history. In fact, the Social Security Administration itself says in its own documents, its own instructions, that the so-called RFC analysis, residual functional capacity analysis, should take into account a number of things, first of which is medical history. She was offering records, medical records, that pertain to her medical history for the specific time period for which she was determined by the judge to be capable of performing her past relevant work. So I would suggest to you that that would be error of law, because one, she has the burden of proof, she tried to meet her burden of proof, what she was offering was pertinent, it was relevant. We found out even later in the judge's decision just how relevant they were, because the judge found that she was capable of doing her final job, her last job, quote, as performed. And so that would require taking into account what was her medical condition at that time. She has the burden of proof at all of those elements, she attempted to meet those, her attempt was rebuffed, and so that is our basis for arguing to you that there was an error of due process here, there was error of law, and the decision ought to be reversed and the case should be sent back so that the administration could take account of those records in doing a proper analysis under the five-step sequential evaluation process. Another important point in the briefing, as you will recall, is we indicated as well that the judge did not fulfill the obligation to fully and fairly develop the record. Where there, where a claimant like this is unrepresented and is floundering as the record appeared to reflect, then it should have been incumbent on the judge to do a simple step of receiving what she was trying to offer to him, look at him to even determine whether they appeared to be pertinent. He made the decision that they weren't important or significant without even looking at content, that's clear from the record. He looked at postmarks on the envelopes that were the containers for the records and determined that they were not relevant. But so we contend that he did not fully and fairly develop the record as he should have as required by case law. Do you think he was required to do anything more other than to look at the relevant, the medical records that were, that he didn't consider? That is, was he obligated to send her out for another examination? He might well have been, depending on what was there. There's the record. How about on the basis of the evidence that was in the record that he did consider? Is that sufficiently ambiguous that it would have required him to, under the circumstances where she was unrepresented and confronted or, you know, basing her claim on a condition that is, that is one that gets progressively worse over time? I would agree, Your Honor. And on her behalf, I would say yes, that the record that we do have, apart from the refused records, there is enough in the record to suggest that a consultative examination may well have been warranted here because of the nature of the lupus, the progression of lupus over time, the ups and downs that seem to be reflected in her own medical history that we do have. I think that would have been warranted. Yes. I would like to reserve the remainder of my time if I could. That's fine. Thanks. May it please the Court, my name is Richard Pomeroy. I'm the Assistant U.S. Attorney in the Anchorage office for the District of Alaska, representing the L.A. Do you want to keep your voice up, counsel? Your co-counsel spoke up very nicely. We heard him very well. So just speak up very clearly, please. I will endeavor. I'm in the indifferent embrace of a summer cold, so I'm going to lean forward as much as possible. Your voice fell off in the last words. Oh, I'm just in the indifferent embrace of a summer cold, so I'm going to lean forward and sacrifice my posture. But the district court properly affirmed the finding of the administrative law judge in this matter, that the evidence was sufficient to find that Ms. Hornbeck was not disabled. The evidence was not ambiguous or inadequate. It was developed that allowed the proper evaluation by the administrative law judge. The issue that has been raised is she offered, at one point, medical records outside of the period of time that was relevant for the analysis by the administrative law judge. The record that was developed does show that there was a significant amount of medical testimony stating that as her treating physician stated, her rheumatologist, that she had very inactive symptoms of lupus, was not experiencing evidence of an active disease. Her neurologist stated she had not been taking her lupus medications since 1987, which she was diagnosed in 1984. The state of Wisconsin Disability Determination Service doctor who reviewed the case did not find that she was experiencing any current depression. That was in 2001. Another doctor for the state Disability Determination Service also confirmed the finding of her treating physician that she had no active, that her lupus was not in an active stage. And these records are from 2000, 2001, and 2002, which are during the relevant period. The records that were tendered by Ms. Hornbeck go from 1984 to 1998 and are outside of the period that was under consideration. The ALJ's findings, I mean, at step one, he did find that she was not engaged in substantial gainful activity. At step two, he did find that she had a severe impairment that is a history of lupus. At step three, the ALJ found that the impairments did not equal one of the listed impairments. And so step four, he found that her residual functional capacity was such that she could perform the work. And that finding was based upon the testimony of her treating physician, Dr. Fiocco, who's a rheumatologist. He found that she could perform the work that she was doing just before she applied for benefits, right? He found that she wasn't, you know, her lupus was not in that stage. And the State Disability Determination Service doctor, which was Dr. Crennan, found that she was capable of doing medium-level work, which the ALJ determined was equal to the apartment manager position she had in 1998. Her last employment. That's correct. The ALJ also developed, you know, sort of what her daily routine. The testimony was extensive that the ALJ developed. Some of the evidence was not ambiguous. The evidence was not inadequate. The determination that she did have, you know, this requisite residual functional capacity is supported by the record. And... Did the State agency or Social Security send her out for a separate consultative examination? No, because there was not a determination that the evidence that was presented was ambiguous or insufficiently developed. The reliance, the ALJ relied upon the testimony of her own treating physician. And there wasn't anything in the medical record that was developed that contradicted his findings, so that there was no need to send her out for a consultative examination. I mean, if a consultative examination had been proffered, the ALJ would properly have weighted the testimony of the treating physician stronger than that of the CE report. So... If there are no questions, I would rely upon the briefing. And... Thank you very much. Okay. Thank you. Your Honor, I would like to just very briefly say that where an applicant has a burden of proof, as she does, and where the Social Security Administration in the adjudication of claims looks back for a period of 15 years to relevant work in determining what's called the RFC analysis, then medical records during that time period ought to be considered. When you say looks back, as I read the ALJ record, it just referred that she, the claimant's past relevant work as apartment manager did not require her to do it. He didn't look back at whether she was working as an apartment manager. He just said as an apartment manager was her last work. Why do you say that he looked back and tested whether or not she was an appropriate appellate manager at that time to do that work? Your Honor, I say that because in the adjudication of disability claims, when an ALJ reaches a point of Step 4 and 5, and doing the preliminary analysis, unnumbered step, the RFC analysis, they look back a period of years to see what type of work the person did do to help inform... I understand that. I understand that. But I don't think the record bears out your how well she did the work. It bears out that she, the record says she did do that work. For example, suppose he says at the end that she could become a convenience store operator. While she's never been a convenience store operator, there'd be no reason to look back to what happened 17 years earlier. So I don't get the connect between his statement that she used to be a, he says she used to be an apartment operator, the particular limitations does not impact upon that work. The limitations she has now does not impact upon that work. The reason, Your Honor, is this. When a judge, an ALJ, makes a determination, let's say in your example, a convenience store manager or clerk or something. Okay. They did, in doing that, in saying, Ms. Hornbeck could be a convenience store clerk. The judge says that based on a determination that in a function-by-function analysis, she would be capable of this. Yes. In order to... That she could, that the claimant could lift 50 pounds occasionally and 25 pounds frequently. Right. And so when I say looking back, he looks back not necessarily to find the same type of job in the past, but to find out whether the jobs that were performed were types of jobs that would indicate to the judge in the disability determination process on a function-by-function basis. Well, if he had said, you did this work before well, and you should be able to do it now, then I can see the records coming in. But that's not what the ALJ found. The ALJ found you used to have this as an occupation, and by your current disabilities, you can do it now. No doctor said they wanted to look at the records. There's nothing there that ties them in in any way. So I'm having difficulty understanding why there was error in failing to look at those records. Because when he makes a determination at Step 4 in looking back to, I won't use the phrase here, looking back, to observe that she was an apartment manager in 1997, 1998. Right. But she was, and he determined, and the case ended at Step 4 based on his determination that she could do that job, quote, as performed. In order to determine how she performed that, I would contend to you that he needed to understand medical history because the regulations, and as I cited in the brief in explaining RFC analysis, indicate item number one is medical. What page in the record does he say as performed? In the decision itself, Your Honor. I've got it. I've got the findings. Okay. He doesn't have it in the actual findings on record 16 in the discussion. Does not prevent the claimant from performing her past relevant work. That's what he said. Right. On record 15, Your Honor, at the very, it's actually the very last line. I'm sorry, it's excerpt. Excerpt 40. Looks like excerpt 49. Based upon the residual functional capacity, the claimant could return her past relevant work as apartment manager or waitress. The evidence indicates the claimant could return to this occupation as performed by the claimant. It's the very last line of excerpt 49. He doesn't carry that over, as you were pointing out, Your Honor, in the formal findings on the very next page, excerpt 50. But in the discussion, his narrative, the page before, he does use the phrase as performed. And so I'm suggesting that that informs his finding number 8 on excerpt 50. And in order to understand how she performed that, she was trying to indicate to him that her medical history should be taken into account in understanding how she performed jobs. You might recall from the record that she says she could never keep a job very long. At times she would feel like she was, you know, she could just go gangbusters and then she just had no energy and could not perform within a short period thereafter. So I think that because she had the burden of proof, she offered medical records to try to sustain her burden of proof. He should have accepted the medical records, especially where he makes a finding or at least in a narrative discussion says that she could have performed her last job as she did perform it. He needs to have the entire context. These medical records would have added to the context. Thank you. Thank you, Counselor. Your time is up. We appreciate your argument. The matter will be submitted. The next case on the calendar was Manzer v. Astor, but that's been submitted on the briefs.
judges: Wallace, Noonan, Paez